# ROBERT C. COX
### v.
# R. L. McGUIRE ET AL.

*Replevin—Pledge by Borrower—Ratification—Instructions—Sec. 49, Chap. 82, R. S.—Jurisdiction of Justice.*

In an action of replevin to recover a horse which was pledged to the defendant by the brother of the plaintiff, to whom it had been loaned, it is *held:* That the hypothesis of ratification contained in the instructions was without foundation in the evidence; that a lien for charges due for keeping a horse can only arise under Sec. 49, Chap. 82, R. S., in favor of one who has actually "kept" it; that the borrower of the horse was not clothed with such *indicia* of ownership as would affect the owner's right; and that the defendant can not now question the jurisdiction of the Justice of the Peace before whom the action was brought.

[Opinion filed November 18, 1887.]

APPEAL from the County Court of Sangamon County; the Hon. J. A. MATHENY, Judge, presiding.

Messrs. S. D. SCHOLES and JAMES M. GRAHAM, for appellant.

According to the testimony of appellees, it is apparent that appellant did not, and under all the circumstances could not, ratify the action of John Cox. To make a ratification binding, the principal must be fully and fairly informed of all the material facts and circumstances. G. C. & S. Ry. Co. v. Kelly, 77 Ill. 426; Kerr et al. v. Sharp, 83 Ill. 199; Reynolds v. Ferree et al., 86 Ill. 570.

Appellant in this case was neither fairly nor fully informed of the facts and circumstances.

Messrs. PATTON & HAMILTON, for appellees.

PLEASANTS, J.  Replevin for a horse by appellant against appellees, commenced before a Justice of the Peace and taken by appeal to the County Court.  Verdict for defendants and judgment thereon for costs and for a return of the property.

Appellant, a farmer near Springfield, being the owner of the horse in question, loaned it to his brother John, a sewing machine agent, who used it for a time, then pledged it to McGuire for a little borrowed money, and left for parts unknown.  The debt remains wholly unpaid.  It is not pretended, however, that John owned the horse or was authorized to pledge it, but the defense was ratification by appellant of what he did.

It appears that after considerable fruitless search and inquiry, appellant got a clew to the whereabouts of the horse by a postal card, mailed to John by McGuire, and came to Springfield to see him.  He did not find him at his law office, but learned from Mr. Colby, his partner, that he had taken the horse in pledge, and that it was at the stable of appellees Keys & Wilson.  Mr. Colby testified that he told appellant the amount of McGuire's claim, and spoke of $15, but could not remember whether he stated the amount to be $15, $17, or $20, though inclined to think it was $17—his recollection being that McGuire first loaned him $15, and then $2 more to pay for feed—and that appellant then said he "would see McGuire and see what the bill was, and would either pay it and take the horse, or let the horse go to pay it."  Poffenbarger, the only other person present, paid but little attention to their conversation, and did not hear all of it, but says he heard appellant make the statement above quoted.  Appellant denies the latter part of the alleged statement, and claims that what he did say was that he "would rather pay $15 (which he also claims was the full amount stated by Colby) than have any trouble over it."  He then went to the stable and found

the horse. The proprietors told him that McGuire had left it there; that they had no interest in it except for three or four days' feed, and that they held it subject to McGuire's order. Refusing to state the amount of their bill, he tendered them $3, and demanded the horse, but they declined to deliver it or to accept the tender, which he has kept good.

On the following day he met McGuire, and his account of the interview is that he told him he had come to make a legal demand for the horse; to which McGuire replied that he (appellant) could get it only at the end of the law, and that he (McGuire) would not give it up.

McGuire's testimony is that he loaned to John $25 at first, and then $2 to pay for feed; that the horse was kept for a time at Little's, where a liability for $16 for his keeping was incurred, and afterward, until replevied, at Keys & Wilson's, to whom he thought he had paid $2. His version of the interview with appellant is as follows: "Plaintiff said he had come to demand the horse. I told him he could have the horse if he would pay me what I was out; that I had loaned his brother $27, and had incurred an expense of $18 for keeping the horse, and that if he would pay that he could have him, otherwise I would not give him up."

The foregoing, with unquestioned proof by several of his neighbors that appellant owned the horse and merely loaned it to his brother, makes the case. No question arises upon the admission or exclusion of evidence. The principal feature of the instructions for defendants is the hypothesis of ratification, which was also introduced into those asked for plaintiff by the court's modifications, to all of which exception was duly taken and which are here assigned for error.

This hypothesis, we think, was entirely without foundation in the evidence. All that is claimed to warrant it is the alleged statement by appellant to Colby, in the absence of McGuire, that he "would see McGuire and see what the bill was, and would either pay it and take the horse or let the horse go to pay it." If he made it, which is denied, and on its face it is somewhat improbable, it was not a promise to Colby, for the benefit of McGuire, for he made none to him nor had any

dealing with him which could furnish any occasion for it. Nor was it a promise to McGuire through him, for he was in no sense the agent or representative of McGuire in this behalf, and so he testified. It was not a statement left by appellant with Colby as his own agent, for McGuire, for it in terms imported that he would himself see McGuire about the matter. And thus it also shows he did not then know what his brother had borrowed, nor what, if any further claim had arisen in consequence of the pledge; and hence he can not be held to have ratified it. His information was that it did not exceed $17, but it is clear his informant did not claim to know; and appellant's language implied that he would not do any thing about it until he should see McGuire and get from him the amount of his claim. We regard it rather as excluding the idea of a present ratification, and only the expression of a disposition on his part, in view of the information then possessed. Clearly to our minds there was nothing in it to bind him.

Attention is called by counsel to Sec. 49 of Chap. 82, R. S., which gives to stablekeepers and "any persons" a lien upon "horses  *  *  *  kept by them for the proper charges due for the keeping thereof and expenses bestowed thereon at the request of the owner or the person having possession thereof." Whether this means a lien upon anything more than the interest of the person by whom or by whose authority, express or implied, the property mentioned is delivered to be kept, we do not feel called upon now to decide, simply referring to Story on Bailments, Sec. 93, 93a, and 279, because we apprehend that a rightful claimant under this statute must be one who has actually " kept," and so had actual possession of the property mentioned, and not one who has only paid or contracted to pay some other for the keeping. There is no evidence that McGuire, as a stablekeeper or otherwise, ever " kept " this horse, and Keys & Wilson have been paid and tendered all they can claim.

We are also referred to the effect upon the owner's rights of his clothing another with the *indicia* of ownership, and to the rule by which it is determined which of two innocent

parties must suffer. If the law referred to applied to cases like this it would soon put an end to lending and all other forms of bailment.

Finally, it is said that the plaintiff could not rightfully recover because the value of the property and consequently the jurisdiction of the Justice of the Peace was not shown.

Appellees appear, however, to have accepted the judgment of the County Court for a return of the property replevied, without questioning its jurisdiction on appeal, instead of having the case dismissed and suing on the bond. But we are not considering errors in favor of the plaintiff below, if the entertaining of jurisdiction was an error, because no cross-errors are assigned. Besides, the bill of exceptions shows that when plaintiff "was proceeding to prove the contents of the writ," counsel for the defendants waived it, saying there was no controversy about them. What is meant by the contents of the writ may not be entirely clear, but we presume they included the value of the property in controversy. The affidavit on which the writ issued stated that it was an old blind farm horse, of the value of $60, and under all these circumstances we will venture to overrule this point.

The judgment of the County Court will be reversed and the cause remanded.

*Reversed and remanded.*