# CHARLESTON.

## PATTON *v.* JOLIFF.

### Submitted June 5, 1897—Decided November 24, 1897.

1. PLEDGE—*Lien—Owner.*
   A pledgee of property from one who has no authority to sell or pledge the property acquires no lien thereon as against the true owner. (p. 93).

2. PROPERTY—*Owner.*
   An owner of property cannot be devested of it except by his consent or by operation of law. (p. 93).

3. PROPERTY—*Owner—Sales.*
   Until the owner either expressly or impliedly agrees to part with his rights of property, or does some act which operates to deceive the vendee into a belief that the vendor has a right to make a sale, his property is never devested from him. Story, Sales, § 201. (p. 93).

4. PLEDGE—*Sales.*
   The same rule applies to pledges as to sales.

Error to Circuit Court, Marion County.

Action by John Patton against M. A. Joliff to recover possession of personal property. Defendant had judgment in the intermediate court, and it was affirmed by the circuit court, and plaintiff brings error.

*Reversed.*

W. S. MEREDITH, for plaintiff in error.

JOHN W. MASON and G. M. ALEXANDER, for defendant in error.

McWHORTER, JUDGE:

In the fall of 1893 John Patton was at Fairmont, and broke an attachment to a wheel of his sulky. F. N. Hays wanted the sulky to go to Cumberland, Md., to a fair, and in consideration of the use of it a few days for that purpose he repaired the attachment, and was to return the sulky to Patton, but, instead of doing so, Hays pledged the sulky to M. A. Joliff for a loan of forty dollars, and placed him in possession of it. Patton, learning that Joliff had his sulky, went to see him, and found him so in possession. Joliff told Patton that he had loaned Hays forty dollars, and had the sulky in pledge ; that he wanted to keep the sulky until he got his money out of Hays, and wanted Patton to help him get it ; that he would be personally responsible to Patton for the sulky, and would ship it to Clarksburg, to Walter Sedgwick, for him ; and asked Patton to write to Hays about it, which he did. In the following June, the sulky not having been sent to him, Patton went to Fairmont after it, when Joliff refused to give it up, and Patton instituted an action of detinue therefor before Justice John Fisher. The case was tried, and judgment rendered for plaintiff. Defendant appealed the case to the intermediate court of Marion county, where it was tried before a jury, and verdict and judgment rendered for defendant. Plaintiff applied to the circuit court of Marion county for, and obtained, a writ of error and supersedeas to the judgment of the intermediate court, and upon the hearing of said writ the circuit court affirmed the judgment of the intermediate court, and rendered judgment on the 6th day of December, 1894, for the defendant. From this judgment, the plaintiff, John Patton, obtained from this Court a writ of error and supersedeas.

On the trial of the cause the plaintiff offered in evidence a letter written by F. N. Hays to plaintiff, dated November 16, 1893, which, on objection by defendant, was excluded by the court, to which plaintiff excepted. On motion of the defendant, the court gave the following instructions to the jury, numbered 2 and 4, respectively, as follows : Instruction No. 2 : "Although the jury believe from all the evidence that the sulky in question was

pledged to the defendant by F. N. Hays without the knowledge and consent of the plaintiff, and they shall also believe that the said sulky was the property of the plaintiff at the time of the making of such pledge, yet, if they further believe from the evidence that the plaintiff, on being informed of such pledge, agreed that the property should remain with the defendant until he was paid his money, and that it should then be sent to the plaintiff by the defendant, such agreement is binding on the plaintiff, and the jury should find for the defendant." Instruction No. 4: "The jury is further instructed that the rule of law is that, as between two innocent suffers by reason of the wrong of a third person, he shall suffer who enabled such third person to commit the wrong." To the giving of which, and each of them, plaintiff objected and excepted, and assigns as errors: First, the exclusion of said letter as evidence from the jury; second, the giving of said instructions Nos. 2 and 4 at the instance of defendant; and, third, that the evidence did not warrant a verdict in favor of defendant, and the same should have been set aside, and a new trial granted plaintiff on the ground that the verdict was contrary to the law and the evidence.

The letter was properly excluded. Communications between plaintiff and Hays could not be introduced as evidence against defendant, who would not be bound by the admissions and unsworn statements of his pledgor, notwithstanding the letter was written in reply to one written by plaintiff at the instance of defendant. The only purpose in introducing the letter at all is to prove the true ownership of the sulky in Patton, and that Hays had no claim to it, or property in it; and there seems to be no question of dispute in the case on that point.

Instruction No. 2 seems to have been given upon the theory that the evidence tends to show that plaintiff repledged the property for the forty dollars, or agreed, "on being informed of the pledge, that the property should remain with the defendant until he was paid his money." The evidence tends to show that Joliff admitted the rights of plaintiff in the premises, and, seeing the mistake he had made in failing to inquire into the right of Hays to the property before accepting the pledge, as it was his duty to do,

desired plaintiff to assist him in recovering his money, which plaintiff, in a spirit of accommodation, was willing to do, and left the property with him, if perchance it might in any way help him to get his money; and after a lapse of quite seven months plaintiff returned, demanding his property, when defendant refused to give it up. In the meantime there is no evidence to show or tending to show that defendant had made any effort whatever to collect or recover his money from Hays, apparently, feeling content with what he deemed his purchase of the sulky at the very low price of forty dollars. If plaintiff had known of the pledge before or at the time it was made by Hays, and had in any way whatever consented to it or acquiesced in it at the time, he might have been bound by it. "A bailee pledging another's property without authority is guilty of conversion, and both bailee and pledgee are liable in trover, whether the pledgee knew the real state of the title or not." 4 Lawson, Rights, Rem. & Prac. § 1755. "Where the property of one is pledged without his knowledge or consent to secure the debt of another, and upon being informed of the transaction the owner agrees that, if the pledgee will forbear the debt for a time, the property may remain in pledge to secure the debt, there is a valid pledge. The forbearance is a sufficient consideration for such an agreement, and a redelivering of possession is not necessary." *Id.* Also, *Smith* v. *Mott*, 76 Cal. 171, (18 Pac. 260.) In the case at bar there was no forbearance asked by plaintiff of the debt of Hays due the defendant, nor was it asked by Hays, and none given, unless by the action of defendant himself, who seems to have taken no step and made no effort whatever to collect or recover his money from Hays; and a pledge, if any, was void for want of consideration.

Instruction No. 4 is misleading, and should not, in view of the evidence, have been given in this case. In support of this instruction appellee cites Benj. Sales, § 19, and quotes a fragment of said section (and even quotes that imperfectly), and from this argues that, "if this be true of sales, it must also be true of pledges." But appellee fails to notice a very important limitation to said rule, immediately following the quotation in the same section. The

writer in said section is treating more particularly of "mercantile transactions, to dealings in goods and merchandise," under the provisions of the "Factor's Act," and not of goods in possession of a tenant. or bailee for hire. The writer then says: "Mr. Chitty, in his treatise on Contracts, has the following passage: 'It is said, however, that if the real owner of goods suffer another to have possession thereof, or of those documents which are the indicia of property therein, thereby enabling him to hold himself forth to the world as having, not the possession only, but the property, a sale by such person to a purchaser without notice will bind the true owner (*per* Abbott, C. J., *Dyer* v. *Pearson*, 3 Barn. & C. 38; *per* Bailey J., *Boyson* v. *Coles*, 6 Maule & S. 14). But probably this proposition ought to be limited to cases where the person who had the possession of the goods was one who, from the nature of his employment, might be taken *prima facie* to have had the right to sell;' " and continues: "This limitation suggested by Mr. Chitty to the rule propounded in the dicta of the two learned judges was approved by the barons of the exchequer in *Higgons* v. *Burton*, [26 Law J. Exch. 342], and, when thus limited, the principle does not differ substantially from the provisions of the factor's act, as amended by the 5 & 6 Vict. c. 39." √True, Hays came into possession of the sulky lawfully, and his possession remained lawful up to the time when the property should have been returned to the owner, and he may have been in lawful possession at the time he pledged it. But "mere possession of a chattel, though indication of title, is not title; and one taking a pledge of it is bound to satisfy himself that the pledgor is the owner; and, if he relies solely upon the pledgor's possession, he takes the risk of having to surrender the property to the true owner.     *     *     * If one holding goods for safe-keeping pledges them with intent to convert the proceeds to his own use, he, in effect, commits a larceny, and the pledgee acquires no title as against the owner, although he deals with the pledgor in good faith." Jones, Pledges, § 54. In *Cox* v. *McGuire*, 26 Ill. App. 315, where a borrowed horse was pledged, and the owner said he would see the pledgee, "and see what the bill was, and he would either pay it, and take the horse,

or let the horse go to pay it," it was held not a ratification of the pledge, but expressed merely a disposition to do so in the future. In *Williams* v. *Merle*, 11 Wend. 80, it is held that an "owner of property cannot be devested of it except by his consent; or by operation of law," and "a *bona fide* purchaser from one who has no title or authority to sell acquires no title against the true owner"; also, "a broker purchasing property from one who has no title, for value, and *bona fide*, and shipping it to his principal, is liable in trover to the true owner." And Story, Sales, § 201, says: "The reason which sustains this rule is that, until the owner either expressly or impliedly agrees to part with his rights of property, or does some act which operates to deceive the vendee into a belief that the vendor has a right to make a sale, his property is never devested from him." From the foregoing it follows that the court erred in not setting aside the verdict and granting a new trial. Therefore the judgment complained of is reversed and annulled, the verdict set aside, and the case remanded to the circuit court for a new trial to be had therein according to law.

*Reversed.*