[No. 3083–3.  Division Three.  December 20, 1979.]

COURTRIGHT CATTLE COMPANY, *Respondent*, v. THE DOLSEN COMPANY, *Appellant*, JOHN B. COTTEN, ET AL, *Respondents.*

*John S. Moore* and *Velikanje, Moore & Shore,* for appellant.

*Daniel P. Pepple, Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, Charles T. Schillberg,* and *Schillberg & Sorlien,* for respondents.

ROE, J.—This is an action between innocent purchasers of the same personal property. Warden Leasing Co. owned certain land in Grant County, Washington. In 1971 Warden leased this land for a term of 15 years at $13,333.33 per month. There was a second lease 1 month later to the same effect which mentioned one 35–foot primary sewage treatment "clearifier,"[1] which is an apparatus for treating waste from the potato processing system. Lessee of both leases was Country Spuds which manufactured french fried potatoes. There was a third lease from Warden to Country Spuds about 1 year later which did not mention the clarifier. The clarifier is affixed to a concrete foundation and has remained at all times on the Warden leased real estate. The parties treated it as personal property throughout the transactions, as do we.

It is arguable whether the first lease from Warden to Country Spuds mentioned the clarifier. The third lease did not. The latter two leases from Warden to Country Spuds were filed for record, one in 1971 and the second in 1972. It appears, though this is not clear, that this clarifier was constructed on the property sometime in late 1971 or early 1972.

Courtright Cattle Co., which was given a judgment for damages in this case, runs a feedlot. It was interested in obtaining from the lessee Country Spuds the waste from the clarifier as cattle feed. A clarifier is a necessary adjunct to a potato processing plant, but Warden Leasing did not have sufficient funds to buy and construct one nor did

---

[1] The treatment plant has been denominated by various names in the instruments and testimony: clearifier, clarifier, and classifier.

Courtright have sufficient cash on hand to finance owner-ship of the clarifier. Consequently, it sought assistance from the Dolsen Company in Yakima, a business which leases personal property.

In a 7–day period, beginning in November of 1972, the following events took place in reference to the clarifier. The chronological order is not necessarily the logical one.

On November 10, Country Spuds sent Warden Leasing a check for $25,000. This was in payment for the clarifier. Rent was not delinquent; this sum was an addition to the monthly rent. There were no supporting data such as a bill of sale or accompanying letters. The testimony indicates Warden Leasing received that money given for the clarifier. At that time title passed from Warden Leasing to Country Spuds.

On the same date there appeared an invoice from Coun-try Spuds, Warden's lessee, indicating: shipped to Dolsen at Yakima and sold to Dolsen, one clarifier located at Country Spuds, Warden, Washington, $25,000. Obviously the clari-fier, on its concrete base on the original leased land, was not shipped to Dolsen. Title passed from Country Spuds, which had just received title from Warden Leasing, to Dolsen. Again, there were no supporting data or bill of sale.

However, the previous day, November 9, a personal property lease was executed for the clarifier from Dolsen to Courtright. Possession of the clarifier (on its cement block) was still with Country Spuds and Courtright never took physical possession. Dolsen purchased this personal prop-erty from Country Spuds and leased it to Courtright for 60 months, or 5 years, for $550 a month using one of its form leases. It gave Courtright an option at the expiration of the term to purchase the leased property for $2,500. The par-ties testified they thought this would probably be the value of the clarifier at that time. Such testimony is important in determining whether that price is a "nominal considera-tion" which may convert an ostensible lease to a security agreement.

Mr. Courtright testified the waste from the clarifier was useful to him and if he received the amount contemplated for the 5–year period, he would transfer title back to Country Spuds. In effect, the value of the waste which he could use for his cattle during the 5–year period would be equal to his interest in the transaction. The value of this waste actually received was not reckoned in the damages awarded Courtright. Country Spuds went bankrupt the next year, 1973, and operations ceased. It was not a party to this action. Courtright then did not get any more waste for its cattle from this clarifier. However, Courtright continued to make the monthly payments to Dolsen in Yakima and 5 years later, in 1977, Dolsen wrote Courtright and reminded it that the option on the lease became due and stated, "If you wish to pick it up, please sign and return the white copy to us. The amount of the option and any sales tax applicable is filled out for your approval. The October payment is, of course, due as usual."

Courtright exercised the option to purchase the clarifier in October 1977, with a $2,500 check to Dolsen. Title then passed from Dolsen to Courtright for the clarifier. The clarifier was securely in cement on land once owned by Warden Leasing, which had been leased to Country Spuds, both of which were insolvent in 1977. There was no potato processing at this time.

There was no notice given by filing or recording by Warden Leasing that it had sold the clarifier to Country Spuds or by Country Spuds that it owned the clarifier, probably because Country Spuds was in possession and had no need to give notice. There was no notice given by Dolsen that it owned the clarifier which was in possession of Country Spuds. There was also no notice given by Courtright that it was a lessee with an option to purchase the clarifier from Dolsen. After Country Spuds went bankrupt and abandoned the premises and operation, still no notices were given. The clarifier remained securely attached to its original cement base.

Dolsen seems to have been quite innocent in many respects. It did not know the operation had been abandoned. There would be no reason to inquire since it received its monthly rental check from Courtright. It seems strange that Mr. Courtright continued making monthly payments without complaint since he was getting no benefit from the leased property; no doubt he felt obliged because of the instrument he signed.

Unknown, apparently, to all the parties heretofore mentioned except Warden Leasing was the fact that the Small Business Administration (SBA) had guaranteed payments on the Country Spuds lease to Warden Leasing; if Country Spuds did not pay, SBA would. However, Warden Leasing too became insolvent.

In 1974, Warden Leasing purported to convey by bill of sale and a deed to SBA all realty and personal property including the "classifier" (clarifier) which had been the subject of the lease to Country Spuds in which Courtright and Dolsen were involved. The SBA, of course, did not want this potato processing plant and so–called classifier and "sold it to Cotten," respondent in this action, and gave him a bill of sale which disclaimed all warranties.

In 1975, Cotten took possession of the clarifier, and Courtright continued to make payments to Dolsen on the lease. It will be seen that Warden Leasing sold this clarifier to two parties: (1) Country Spuds in 1972, who sold it to Dolsen the same year, who leased it to Courtright at the same time; and (2) in 1974 to SBA, which then sold it to Cotten. The questions are as between Cotten, grantee of SBA, and Dolsen, grantee of Country Spuds: Who owns the clarifier? What is the effect of the lease–option between Dolsen and Courtright? The trial judge decided this case on a comparative innocence theory adjudging title to be in respondent Cotten and that Dolsen owed Courtright approximately $28,000 in damages for failure to deliver the clarifier, on exercise of the option.

The basis of the trial court's conclusion is expressed in finding of fact No. 12:

By failing to place anything of record or do any other act which would indicate their interest in said clarifier, Dolsen and Courtright Cattle Company and J. C. Courtright maintained the impression that Warden Leasing was the owner of the clarifier and that the SBA could acquire good title thereto from Warden Leasing and could convey good title thereto to Cotten. By their failure to record or do any other act which would indicate their interest in the clarifier, Dolsen and Courtright Cattle Company and J. C. Courtright made possible the sales to the SBA and to Cotten without the SBA or Cotten having any knowledge or notice whatsoever of any outstanding claims against the clarifier.

The trial court's rationale was an expression of the old rule that if property sold remains in the seller's possession, then in order for the buyer to protect himself, he must record his bill of sale. It reasoned that since Courtright and Dolsen failed to place of record their interest in the clarifier which was restored to the possession of the original seller, Warden Leasing, upon the insolvency of Country Spuds, that made possible the sale to SBA and from it to Cotten.

It was not suggested that the lease from Dolsen to Courtright was a security transaction. Rather, it was a bona fide lease of personal property. Since the Uniform Commercial Code, RCW 62A.9, part 3, applies to security interests, it does not determine the outcome of this action.

Is there any method by which the lessors (Warden Leasing and Dolsen) of personal property may record or otherwise give constructive notice of ownership? We do not find it in the U.C.C. RCW 62A.1–201(37) states:

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (RCW 62A.2–401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to Article 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under RCW 62A.2–401 is not a "security interest", but a buyer

may also acquire a "security interest" by complying with Article 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (RCW 62A.2–326). *Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security,* and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property *for no additional consideration or for a nominal consideration* does make the lease one intended for security.

(Italics ours.) Dolsen, citing *Swanson v. White,* 83 Wn.2d 175, 517 P.2d 959 (1973), states that there was no way Dolsen could have protected itself nor is it required to do so. *Swanson v. White, supra,* involved an action by a tenant who was the lessee of real estate and also a lessee of certain personal property. (The tenant had defaulted on both leases.) The landlord sought to foreclose for unpaid rent and levy on the third person lessor's personal property which was in the tenant's possession. The court held for the lessor of the personal property, stating on page 181:

[A] conditional vendor is given a means of protecting his interest—he can file his contract . . . But a lessor is afforded no such protection. We are unable to discover any statute which provides for the filing of a lease as a means of protecting the interest of the lessor. The Uniform Commercial Code requires the filing of ostensible leases which are in fact taken as security interests— leases which give the lessee the option to purchase. *See* RCW 62A.1–201(37). The leases involved in this action are admittedly bona fide leases which require the return of the leased property at the expiration of the leasehold term. . . . Since the legislature has not seen fit to require the filing of leases (unless they are in fact security devices) in order to protect the interest of the lessor, it has at least impliedly recognized that the lessor's interest is not subject to claims of creditors of the lessee.

In the case at bench, the real question is how could Dolsen have protected itself against creditors and vendees (SBA

and Cotten) of Warden Leasing in whose possession Dolsen left his clarifier? This question was anticipated by U.C.C. commentators without resolution. *See* Comment, 13 U.C.L.A. L. Rev. 125 (1965).

█ Neither Warden Leasing nor Country Spuds were merchants in the business of selling clarifiers.[2] Warden Leasing's mere possession of the goods after selling to Country Spuds who sold to Dolsen does not give Warden Leasing the authority to transfer title. Thus under RCW 62A.2–403(1)[3] which it is urged gives SBA all title which its transferor (Warden Leasing) had or had power to transfer is inapplicable. Even though the comparative innocence doctrine is generally applicable where there is a duty to record, it is not always applicable where property is left in the possession of a third person.

*Dahl v. Stromberg*, 31 Wn.2d 884, 200 P.2d 495 (1948) is instructive. Bennett allowed Stromberg to have possession and use of his tools and equipment. Dahl bought Stromberg's gas station with tools and equipment from Stromberg after examining the records and finding no interest recorded. Dahl did not claim there were any documents or that he had made any inquiries as to the true owner of the tools. The court stated at page 888:

> It has been held times without number that the owner of a chattel is not estopped to assert title to it by permitting another to use it in his business. See cases collected in note in 7 A. L. R. 676. A statement in *Cox v. McGuire*, 26 Ill. App. 315, is peculiarly appropriate, and we quote:

---

[2]RCW 62A.2–403(2):

"Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

[3]RCW 62A.2–403 reads in part:

"(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value."

"We are also referred to the effect upon the owner's rights of his clothing another with the *indicia* of ownership, and to the rule by which it is determined which of two innocent parties must suffer. If the law referred to applied to cases like this it would soon put an end to lending and all other forms of bailment."

Dolsen was a bona fide purchaser for value. It had no bill of sale. There was no duty to record the lease to Courtright, since it was not a security interest. Dolsen had no duty to ask for and record a bill of sale since the property was not left in the hands of a merchant in the business of selling clarifiers. Cotten obtained the clarifier presumably upon some notice since the conveyance to him from SBA expressly disclaimed any warranties. There is no showing of any inquiry by Cotten as to the ownership of the clarifier. Under these circumstances, since Dolsen is the owner of the clarifier, and has transferred title to Courtright Cattle, Courtright may take possession.

Judgment is reversed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied January 14, 1980.

Review granted by Supreme Court March 21, 1980.